## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| DONALD BROWN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:12-CV-1227-DDN |
| | ) |
| TOWN AND COUNTRY MASONRY | ) |
| AND TUCKPOINTING, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before the court on the motions of defendant Town and Country Masonry and Tuckpointing, LLC, to dismiss. (Doc. 18.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 12.) Oral argument was heard on November 29, 2012.

## I. BACKGROUND

On July 9, 2012, plaintiffs commenced this action against defendant Town and Country Masonry and Tuckpointing, LLC ("Town and Country"). On October 17, 2012, plaintiffs amended their complaint by attaching documentation supporting their collective bargaining agreement claim, including copies of three collective bargaining agreements allegedly breached by Town and Country, and a calculation of the alleged damages. (Doc. 17.) On August 21, 2012, defendant Town and Country moved to dismiss plaintiffs' claim. (Doc. 18.)

### Plaintiffs' Allegations in the Amended Complaint

The amended complaint alleges the following. Plaintiff Bricklayers' Union Local No. 1 of Missouri ("Bricklayers' Union") is a labor organization. (Doc. 17 at ¶ 8.) Defendant Town & Country is a limited liability company doing business in the Eastern District of Missouri. (Id. at ¶ 9.)

The collective bargaining agreements breached by Town and Country require it to make payments to the Bricklayers' Union's various employee benefit plans, as defined by the Employee Retirement Income Security Act of 1974 (ERISA). (Id. at ¶ 11; Doc. 17-1 at 12 (Art. XI, § 4 of the agreement effective from June 1, 2006 to May 31, 2011); Doc. 17-3 at 12 (Art. XI, § 4 of the agreement effective from June 1, 2011 to May 31, 2015).) The employee benefits plans are set up as trusts and are plaintiffs along with their trustees. (Doc. 17 at ¶ 11.) The employee benefit plans for the Bricklayers' Union include the Welfare Trust, the Pension Trust, the Supplemental Pension Plan, the Vacation Trust, the Apprenticeship and Training Trust, and the International Pension Fund. (Id. at ¶¶ 1-6.) Town and Country is also required to make payments to plaintiff Masonry Institute of St. Louis, a Missouri not-for-profit corporation. (Id. at ¶ 7; Doc. 17-1 at 12 (Art. XI, § 4 of the agreement effective from June 1, 2006 to May 31, 2011); Doc. 17-3 at 12 (Art. XI, § 4 of the agreement effective from June 1, 2011 to May 31, 2015).)

On November 1, 2006, Town and County entered into an agreement with the Bricklayers' Union. (Id. at ¶ 12.) The agreement states:

> The terms and conditions of this Agreement shall unless otherwise provided, herein commence on the 1st of June 2006 and continue in effect from and after the date of effectiveness to and including May 31, 2011 and thereafter from year to year provided neither party gives notice to the other of its desire to negotiate a new Agreement. Said notice shall be given at least sixty (60) days prior to the expiration of this Agreement.

(Doc. 17-1 at 15 (Art. XII, § 10 of the agreement effective from June 1, 2006 to May 31, 2011).)

On June 1, 2011, Town and Country entered into an interim agreement with the Bricklayers' Union, which stated that after the Mason Contractors Association and the Bricklayers' Union entered into a new collective bargaining agreement, Town and County would accept the terms of the new agreement and the agreement would bind Town and Country retroactive to June 1, 2011. (Doc. 17 at ¶ 13.)

Around July 2011, the Bricklayers' Union and the Mason Contractors Association entered into a new collective bargaining agreement. (Id. at ¶ 14.) The agreement states:

> The terms and conditions of this Agreement shall unless otherwise provided, herein commence on the 1st day of July 2011 and continue in effect from and after the date of effective to and including May 31, 2015 and thereafter from year to year provided neither party gives notice to the other of its desire to negotiate a new Agreement.

> Said notice shall be given at least sixty (60) days prior to the expiration of this Agreement.

(Doc. 17-3 at 16 (Art. XII, § 10 of the agreement effective from July 1, 2011 to May 31, 2015).) Thereafter, Town and Country made fringe benefit contributions and paid wage rates in accordance with the new agreement. (Doc. 17 at ¶ 14.)

On July 31, 2012, Town and Country signed the new collective bargaining agreement. (Id. at ¶ 15.) At this time, Town and Country acknowledged that the new agreement had bound it since the time of the agreement's formation. (Id.)

The collective bargaining agreements required Town and Country to make weekly payments of union dues through the purchase of fringe benefit stamps. (Id. at ¶ 16.) The agreements also required Town and County to submit monthly reports to plaintiffs showing the number of hours worked by Town and Country's employees. (Id.) Town and Country failed to purchase the required fringe benefit stamps or pay the required contributions. (Id.)

The collective bargaining agreements and the plans adopted by the trustees of the employee benefit trusts permit the trustees to examine Town and Country's books and records to insure that stamp purchases are made in accordance with the collective bargaining agreements. (Id. at ¶ 17.) Further, the collective bargaining agreements award liquidated damages for delinquent contributions. (Id. at ¶ 18.) Town and Country's records for work performed from January 1, 2011 to August 7, 2012 reflect $48,682.10 in delinquent contributions and $13,488.51 in liquidated damages. (Id. at ¶ 19.) Plaintiffs, through counsel, demanded payment of these specific amounts. (Doc. 17-5 at 1-2.)

Plaintiffs are additionally entitled to recover interest and liquidated damages, costs, accounting fees, and reasonable attorney fees pursuant to 29 U.S.C. § 1132(g) and the terms of the collective bargaining agreements. (Doc. 17 at ¶ 20.)

## II.  MOTION TO DISMISS

Town and Country moves to dismiss plaintiffs' action, arguing that Town and Country and plaintiffs had no agreement during the times that plaintiffs allege Town and Country breached the agreements, and thus plaintiffs lack standing and subject matter jurisdiction. Town and Country argues that even if it had breached the agreements, the National Labor Relations Board (NLRB) has exclusive jurisdiction over violations of collective bargaining agreements. Town and Country

further argues that plaintiffs failed to exhaust the grievance procedure provided by the collective bargaining agreements prior to filing suit. (Doc. 19.)

Plaintiffs respond that collective bargaining agreements bound Town and Country at all times relevant. Further, plaintiffs respond that ERISA and the Labor Management Relations Act (LMRA) grant subject matter jurisdiction to recover delinquent contributions to employee benefit plans. Plaintiffs also respond that the grievance procedures provided by the collective bargaining agreements do not apply to disputes between employee benefit trusts and employers. (Doc. 20.)

### III. MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. See Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir 2010); Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001). To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "more than labels and conclusions." Id. at 555. Rather, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

The Federal Rules of Civil Procedure demand only that a complaint present "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for relief sought." Fed. R. Civ. P. 8(a). And in this regard, the court must be mindful of Federal Rule of Civil Procedure 84 and its requirement that the attached Forms 10 to 21 be considered examples of the "simplicity and brevity that [Rule 8] contemplate[s]." Fed. R. Civ. P. 84; see Hamilton v. Palm, 621 F.3d 816, 818 (8th Cir. 2010).

### IV. DISCUSSION

**A. Scope of the Collective Bargaining Agreements**

Town and Country argues that plaintiffs fail to state a claim upon which relief can be granted because the collective bargaining agreements did not bind Town and Country during the time of its

alleged breach.  Plaintiffs argue that the agreements bound Town and Country at all times relevant. Copies of all of the agreements allegedly breached by Town and Country are attached to plaintiffs' amended complaint and may be considered as part of the complaint for all purposes.  See Fed. R. Civ. P. 10(c).

Federal common law governs the interpretation of collective bargaining agreements.  Allied Sales Drivers & Warehousemen, Local No. 289 v. Sara Lee Bakery Group, 2012 WL 4470466, *5 (D. Minn. 2012).  "To prove breach of a collective bargaining agreement, a plaintiff must show 1) the defendant had a contractual obligation; 2) the defendant breached that obligation; and 3) the damages sought by the plaintiff 'foreseeably flowed from the breach.'" Id. (citing Agathos v. Starlite Motel, 977 F.2d 1500, 1508 (3d Cir.1992)).  Courts must enforce clear and unambiguous terms of collective bargaining agreements as written.  Eastmount Constr. Co. v. Transport Mfg. & Equip. Co., 301 F.2d 34, 39 (8th Cir.1962).

According to plaintiffs' complaint, on November 1, 2006, Town and County entered into a collective bargaining agreement with the Bricklayers' Union, effective from June 1, 2006 to May 31, 2011.  In the interim agreement, signed on June 1, 2011, Town and Country agreed to be bound retroactively by a new agreement to be made between the Bricklayers' Union and the Mason Contractors Association.  The Bricklayers' Union and the Mason Contractors Association entered into that agreement on around July 2011.  Plaintiffs further allege that Town and Country impliedly agreed to the new agreement prior to signing by paying the wage rates and making fringe benefit contributions according to the terms of the new agreement.

Plaintiffs also allege that Town and Country failed to purchase the required fringe benefit stamps or pay the required contributions pursuant to the agreements.  From January 1, 2011 to August 7, 2012, Town and Country accrued $48,682.10 in delinquent contributions and $13,488.51 in liquidated damages. In sum, plaintiffs state a valid claim for breach of collective bargaining agreements.

**B. Failure to exhaust administrative remedies**

Town and Country further argues that plaintiffs' action is premature because the trustees of the employee benefit plans failed to process their claim through the grievance procedures set forth

in the agreements. Plaintiffs respond that the agreements require use of the grievance procedure solely for disputes between employees and employers and not for disputes between employee benefit trusts and employers. Plaintiffs further respond that the agreements expressly permit the trusts to file suits against employers.

Article III of the agreement effective from June 1, 2006 to May 31, 2011 states that the grievance procedure applies to "[a]ll disputes between the Employer and the Employee." (Doc. 17-1 at 3.) "Employee" is defined as:

> all journeymen, apprentices, superintendents and foremen (1) who are members in good standing of the Union or (2) who are working under the jurisdiction of the Union and have tendered the periodic dues uniformly required of members of the Union as a condition of acquiring or retaining membership and (3) who are in the employ of an Employer who has entered into this Collective Bargaining Agreement.

(Id. at 1.)

Article XI, Section 9 of the agreement states:

> It is agreed that the trusts or plans referred to in Articles V, VI, VII, VIII, IX and X of this Agreement or the trustees thereof, as the applicable law may provide, may sue the Employer as defined in this Agreement and any other person signatory to this Agreement as guarantors, for any delinquencies and penalties as provided in this Agreement or in the Trust agreements herein referred to.

(Id. at 13.)
Articles V, VI, VII, VIII, and IX of that agreement refer to plaintiffs Masonry Institute of St. Louis, Welfare Trust, the Pension Trust, the Supplemental Pension Plan, the Vacation Trust, the Apprenticeship and Training Trust, and the International Pension Fund. (Id. at 5-9.) The pertinent provisions of the collective bargaining agreement effective from July 1, 2011 to May 31, 2015 are identical to the above-cited provisions from the agreement effective from June 1, 2006 to May 31, 2011. (Doc. 17-3 at 1, 3, 5-9, 14.)

The collective bargaining agreements distinguish between employees and employee benefit trusts. The agreements provide a grievance procedure for disputes between employers and employees but expressly permit employee benefit trusts and their trustees to sue. Because the instant case concerns a dispute between an employer and employee benefit trusts, Town and Country's contention that plaintiffs prematurely filed suit is without merit.

Accordingly, Town and Country's motion to dismiss for failure to state a claim upon which relief can be granted is denied.

**C. Subject matter jurisdiction**

Next, Town and Country argues that plaintiffs lack subject matter jurisdiction because the NLRB has exclusive jurisdiction over collective bargaining agreement disputes. Plaintiffs argue that LMRA and ERISA provide this court with subject matter jurisdiction.

Section 185(a) of the LMRA confers subject matter jurisdiction on "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in [the LMRA]." In their complaint, plaintiffs allege that, as defined by the definitions set forth in the LMRA, Town and Country is an employer and that plaintiff Bricklayers' Union is a labor organization. Plaintiffs also allege that Town and Country and Bricklayers' Union formed a contract, and that Town and Country violated that contract. Further, plaintiffs demand relief as a result of the alleged violations of contract.

Section 1132 of ERISA states, in relevant part:

a) Persons empowered to bring a civil action. A civil action may be brought--
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C.A. § 1132.

Here, the trustees of the plaintiff employee benefit plans are bringing action to enforce 29 U.S.C. § 1145, which requires employers to fulfill their obligations to make contributions to multi-employer plans under the terms of a collective bargaining agreement. Accordingly, Section 185(a) of the LMRA and Section 1132 of ERISA confer subject matter jurisdiction over this case.

The NLRB has primary jurisdiction to regulate conduct that is arguably protected or arguably prohibited by the National Labor Relations Act, otherwise known as unfair labor practices. San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 244-45 (1959) (referring to rights and prohibited practices as set forth in 29 U.S.C. §§ 157-58). However, "[t]he Garmon preemption doctrine is simply not relevant where there is a claim under [§ 185 of the LMRA] asserting a breach of the collective bargaining agreement." ABF Freight Sys., Inc. v. Int'l Broth. of Teamsters, 645 F.3d 954, 964 (8th Cir. 2011).

As stated above, plaintiffs make a claim under § 185(a) of the LMRA, alleging solely breach of collective bargaining agreements and not unfair labor practices under the National Labor Relations Act. Therefore, Town and Country's argument that the NLRB has exclusive jurisdiction is without merit.

Defendant also argues that plaintiffs lack constitutional standing. "Federal jurisdiction is limited by Article III of the Constitution to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction." ABF Freight Sys., Inc. v. Int'l Broth. of Teamsters, 645 F.3d 954, 958 (8th Cir. 2011). To establish standing, a plaintiff must show 1) injury-in-fact; 2) a connection between actions of the defendant and the injury-in-fact; and 3) the injury-in-fact is likely to be redressed by a favorable court decision. Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

Plaintiffs' complaint sets forth that they entered into agreements with defendant Town and Country that were later breached. Additionally, the complaint states that Town and Country breached these agreements, sufficiently alleging causal connection. Finally, plaintiffs seek damages, interest, and costs of litigation to redress their injury. Accordingly, plaintiffs have constitutional standing. See ABF Freight Sys., Inc., 645 F.3d at 961.

Town and Country's motion to dismiss for lack of subject matter jurisdiction is denied.

## V. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendant Town & Country Masonry and Tuckpointing, LLC to dismiss plaintiffs' cause of action (Doc. 18) is denied.

        /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 3, 2012.